UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------

Stephen Walker, :
: Case No. 1:19-cv-00750
       Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. 10]
Antoinette Chambers-Smith, et al. :
:
       Defendants. :

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Stephen Walker sues Defendants, employees of the Ohio Department of Rehabilitation and Correction. Walker alleges violations of his constitutional rights.[1]

On December 3, 2019, Defendants moved to dismiss for failure to state a claim.[2] Plaintiff did not file any opposition.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

I. **Background**

On a motion to dismiss, the Court must accept all the allegations in the complaint as true and view the complaint in the light most favorable to Plaintiff.[3] Plaintiff Walker asserts the following facts:

Ohio incarcerates Plaintiff Walker at the Ohio State Penitentiary. Walker was earlier incarcerated at Mansfield Correction Institution.[4] Defendants are prison officials.[5]

---

[1] Doc. 10.
[2] Doc. 20.
[3] *Toledo Elec. Welfare Fund v. Northwest Ohio Buckeye Elec., Ltd.*, 518 F.Supp.2d 1001, 1004 (N.D. Ohio 2007).
[4] Doc. 10 at 3.
[5] *Id.* at 3-4.

On September 6, 2018, Defendant Corrections Officer Hristovski escorted Plaintiff Walker to the prison's recreation cage.[6] After Walker finished his activities within the recreation area, Walker asked Defendant Hristovski to take him back to his cell.[7] Hristovski told Walker to wait as Hristovski was eating.[8]

About 15 minutes later Hristovski arrived to take Walker back to his cell.[9] Walker had changed his mind and asked to stay for Walker's allotted hour of recreation.[10] Walker claims that Hristovski responded that he was going to "toss" Walker's cell if Walker did not return to his cell as Hristovski had ordered.[11]

Plaintiff Walker then claims that Defendant Hristovski went to Walker's cell. Hristovski put Walker's blanket on the floor, dipped tissues into the toilet, and smeared the tissues on the cell's floor and Walker's blanket.[12] Walker claims Hristovski tossed Walker's Quran into the toilet and then onto the floor.[13]

Walker claims he became agitated and started to yell. According to Walker, Hristovski alleges that Walker spat on him although Walker has never been disciplined for the spitting.[14] Walker says Hristovski then sprayed Walker with mace.[15] He told Walker, "I'm going to fuck you up" and then walked away.[16]

---

[6] *Id.* at 6.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

Walker then alleges that, fearing for his life, he climbed on top of the recreation cage.[17] Walker says he demanded mental health personnel because he thought the officers would do things "by the book" while the mental health personnel were present.[18] An unidentified mental health employee arrived, and Walker came down.[19] Walker alleges that he was then escorted back to his cell. Walker says he then cleaned the cell.

Walker next alleges that prison officials then moved Walker to a "suicide cell" for mental health observation.[20] While there, Walker says he asked Defendant Carden for toilet paper.[21] He says he also asked for a "white shirt."[22] By "white shirt," the Court understands Plaintiff to mean a mental health provider. Walker claims that Carden refused to provide the toilet paper, and claims that Carden said a mental health provider would not be coming.

In the face of this refusal, Walker says he flooded the suicide cell to have a mental health provider to come.[23] Plaintiff Walker alleges that the flooding failed to get a response, so Walker defecated and used his suicide blanket to clean himself.[24] Because he was refused toilet paper, Walker says he wiped his feces on the cell door.[25] Walker claims that Officer Carden still refused to call a white shirt and told Walker that he would have to sleep in the soiled cell.[26]

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 7.
[25] *Id.*
[26] *Id.*

A white shirt later came to discuss the situation, and Walker was able to clean the suicide cell.[27]

Walker's complaint alleges that on September 7, the following day, prison officials removed Walker from mental health observation, and Defendants Carden and Albright escorted him back to his normal cell.[28] When Walker arrived at the cell, Walker says it was trashed, with his blanket ripped up and in water and his Quran in water.[29] Walker claims his hygiene products were missing.[30] Walker says he asked to be returned to the suicide cell so that he would not be blamed for the condition of his normal cell. Instead, Defendants pushed him into the cell and closed the door.[31]

Walker claims he refused to take off his handcuffs and asked for a white shirt.[32] Defendant Carden replied, "Don't worry, just more reason to fuck you up."[33] Walker later gave up his handcuffs.

Walker's complaint acknowledges that he then popped his cell's sprinkler head, flooding the cell.[34] He says he then refused to leave the cell.[35] A white shirt, identified as a John Doe, said that the Special Response Team would come into the cell and hold Walker down in the water, drowning him and claiming that he resisted unless Walker came out of the cell.[36] A crisis negotiator managed to get Walker to come out of the cell.[37]

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*

Walker then claims that an officer led Walker from the cell, shoving him into walls.[38] Defendant Wolpe and unidentified officers then allegedly took Walker off camera and hit and kicked him repeatedly in the head.[39]

Walker's complaint alleges officers stripped Walker of his clothes and gave him a suicide gown.[40] Walker returned to his normal cell which still had standing water.[41] He says he was not given normal clothing or a bed spread.[42]

Walker says he remained in his flooded cell through September 8 and 9.[43] At an unspecified time, another inmate gave him a blanket.[44] Walker says he asked prison officials for permission to exit his cell to file an administrative grievance through a kiosk device.[45] Prison officials allegedly denied his requests.[46] Defendant Salas denied Walker's requests for normal clothes and supplies.[47]

On Sunday, September 9, Walker says he smeared his own feces on himself "in order to stay warm" and all over his cell to bring attention to his situation.[48] Walker was escorted out of his cell.[49]

Walker claims prison officials denied Walker's medical attention request. Walker said he was going to harm himself "so that [he] wouldn't have to be placed back into [his] cell," which remained wet from his flooding it.[50] In response to these threats, Walker says

---

[38] *Id.* at 8.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.* at 9.

prison officials again sent him to the suicide cell, still covered in feces, and he remained in that condition until the next day.[51]

Plaintiff Walker says that on September 10, a mental health employee came and talked to Walker and let him off suicide watch.[52] Walker requested to see medical personnel because he had spent hours covered in his own feces.[53] He says prison officials denied his request.

Walker says prison officials escorted Walker back to his normal cell.[54] He was given material to clean the cell and received a bed and blanket and took a shower.[55]

On April 4, 2019, Plaintiff filed this matter *pro se*.[56] On September 9, 2019 he filed an amended complaint.[57] Plaintiff alleges that Defendants' actions violated his First, Eighth, and Fourteenth Amendment rights.

On December 3, 2019, Defendants moved to dismiss on the ground that Plaintiff fails to state a claim.[58] Specifically, Defendants argue that Plaintiff has not stated any claims against the supervisory Defendants and that his allegations against the other Defendants do not state plausible claims that would entitle Plaintiff Walker to relief.[59] Plaintiff has not opposed the motion to dismiss.

II. **Discussion**

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] Doc. 1.
[57] Doc. 10.
[58] Doc. 20.
[59] *Id.*

Pro se litigants are not exempt from pleading requirements. As with all complaints, Walker's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[60]

When analyzing the complaint for a motion to dismiss under Rule 12(b)(6), the Court must be satisfied that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[61]

Pro se litigants' pleadings are held to less stringent standards than those drafted by lawyers.[62] "A pro se plaintiff's complaint . . . should only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[63] While the Court must liberally construe Walker's pro se pleadings, it may not fill in missing allegations or assume the role of Plaintiff's counsel.[64]

### A. Walker Fails to State Any Claims Against Defendants Chambers-Smith and Sheldon.

Defendants argue that Plaintiff Walker has not stated a claim against any of the supervisory Defendants-- Chambers-Smith, Sheldon, or Salas—because he has not specified any action taken by these Defendants.

To state a claim against a particular defendant, Plaintiff Walker must allege specific conduct by that defendant.[65] "Where, as here, individuals are merely named as defendants

---

[60] Fed. R. Civ. P. 8(a)(2).
[61] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[62] *Lucas v. Chalk*, 785 F. App'x 288, 290-91 (6th Cir. 2019).
[63] *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).
[64] *Lucas*, 785 F. App'x at 290-91.
[65] *Gilmore v. Corrections Corp. of America*, 92 F. App'x. 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983."); *Frazier v. Michigan*, 41 Fed. App'x. 762, 764 (6th Cir. 2002).

in a civil rights action without supporting allegations of specific conduct in the body of the [c]omplaint, the [c]omplaint is subject to dismissal even under the liberal construction afforded to *pro se* plaintiffs."[66] Furthermore, liability under § 1983 cannot be imposed solely on the basis of *respondeat superior*.[67]

The complaint names Director Chambers-Smith and Warden Sheldon, but Walker fails to state that they took any direct actions. Additionally, though Chambers-Smith and Sheldon serve in supervisory roles, Walker does not "allege that these defendants condoned, encouraged, or knowingly acquiesced in the alleged misconduct."[68]

Without any misconduct allegations against Defendants Chambers-Smith and Sheldon, Walker fails to state a claim against these Defendants.[69] The Court **GRANTS** Defendants' motion to dismiss as to these two Defendants.

### B. Plaintiff States A First Amendment Claim.

Plaintiff Walker alleges two types of First Amendment violations—burdened religious exercise and First Amendment retaliation. The Court will consider each in turn.

#### 1. Burdened Religious Exercise

Plaintiff Walker alleges that Defendant Hristovski put his Quran in toilet water and then on the floor.[70] He also alleges that when he returned to his cell after spending time in a suicide cell his Quran was in water, though he does not allege that any of the Defendants put it there.[71]

---

[66] *Wooden v. Budish*, No. 1:19-CV-1322, 2019 WL 7290973, at *1 (N.D. Ohio Dec. 30, 2019) (citing *Gilmore*, 92 F.App'x. at 190; *Frazier*, 41 F. App'x. at 764).
[67] *Gilmore*, 92 F. App'x. at 190.
[68] *Id.*
[69] Defendants also argue that Plaintiff fails to state a claim against Defendant Salas for the same reasons. Doc. 20 at 5. Contrary to Defendants' assertions, however, Plaintiff Walker makes allegations against Defendant Salas and therefore the claims against him may not be dismissed on these grounds. *See* Doc. 10 at 6.
[70] Doc. 10 at 6.
[71] *Id.* at 7.

In order to state a claim for violations of his First Amendment right to free exercise of religion, an inmate must show that he seeks to exercise religion out of a "sincerely held religious belief" and that the Defendant substantially burdened that religious exercise.[72] Once Walker satisfies those first two steps, the burden shifts to the government to meet the compelling-interest and least-restrictive means test.[73]

Construing Plaintiff's pleadings liberally and in favor of Plaintiff at this stage, the Court cannot say that Plaintiff can prove "no set of facts in support of his claim which would entitle him to relief."[74] Plaintiff's complaint asserts that he possessed a Quran, was agitated by its desecration, and that the book's placement in toilet water violated his religious rights. At this stage of the litigation, the Court declines to dismiss Walker's burdened religious practice claim.[75]

Walker makes an additional claim regarding burdened religion. He says that when he returned to his normal cell from the suicide cell his Quran was in water. He does not specifically allege that any of the Defendants were responsible for putting it there. Due to the lack of allegations against a specific Defendant regarding this claim, the Court dismisses Walker's second burdened religious claim. Walker must allege violations on the part of specific Defendants in order to state a claim.[76]

2. Retaliation

---

[72] *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019).
[73] *Id.*
[74] *Herron*, 203 F.3d at 414.
[75] Other courts have found that prison officers' destruction of a prisoner's Quran states a claim. *See Malik v. City of New York*, No. 11 Civ. 6062(PAC)(FM), 2012 WL 3345317, at *12 (Aug. 15, 2012) (citing cases in support of conclusion that officers' destruction of Quran states a claim), *adopted by* 2012 WL 44775156 (Sept. 28, 2012); *Harris v. Escamilla*, 736 F. App'x. 618, 620 (9th Cir. 2018) (denying summary judgment where officer intentionally desecrated Koran).
[76] *Gilmore*, 92 F. App'x. at 190 ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery . . .").

Walker says that prison guards pushed him into his cell in retaliation for Walker's climbing on top of the recreation cage, smearing feces on his cell door, and flooding his cell.[77]

A retaliation claim consists of three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct."[78]

Plaintiff does not allege that his conduct was protected, and the Court fails to see how it could be. Plaintiff says that he climbed on top of the recreation cage and he flooded and smeared feces in his suicide cell.[79] "A prison inmate's speech is not protected by the First Amendment if it is inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."[80] None of Plaintiff's actions appear to have been protected as they no doubt violated prison rules.[81]

The Court **DENIES** Defendants' motion to dismiss the burdened religion claim and **GRANTS** Defendants' motion to dismiss as to Walker's First Amendment violation claims.

### C. Plaintiff Does Not Have a Right to Effective Prison Grievance Procedure.

Plaintiff Walker alleges that his rights were violated when he was not allowed to leave his cell to submit a grievance despite continuously asking to be able to do so over the course of two days.[82]

---

[77] Doc. 10 at 7.
[78] *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)
[79] Doc. 10 at 6-7.
[80] *Griffin v. Berghuis*, 563 F. App'x. 411, 415 (6th Cir. 2014) (internal quotations omitted)
[81] *Thaddeus-X*, 175 F.3d at 394 ("[I]t is generally much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern. . . . [I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'"). Plaintiff does not allege that his conduct complied with prison regulations.
[82] Doc. 10 at 8.

The Sixth Circuit has held that "there is no inherent constitutional right to an effective grievance procedure."[83] Plaintiff's inability to access the grievance kiosk for a couple days' time does not sufficiently allege a rights violation. The Defendants' motion to dismiss this claim is also **GRANTED**.

### D. Plaintiff's Loss of Recreation Time Does Not State a Claim.

Plaintiff says that Defendant Hristovski impermissibly shortened his recreation hour by forcing Plaintiff back to his cell after Plaintiff changed his mind about utilizing his full hour of recreation.[84] Recreation restrictions must pose an atypical and significant hardship or affect the duration of an inmate's sentence in order to implicate the inmate's liberty interest.[85] Cutting short part of Walker's one hour of recreation time on one day does not rise to a constitutional violation.[86] The Court therefore **GRANTS** Defendants' motion to dismiss this claim.

### E. Plaintiff's Eighth Amendment Claims Fail in Part.

Plaintiff makes various allegations that are best characterized as Eighth Amendment violation claims.[87] The Court will deal with those involving force, conditions of confinement, and medical treatment separately.

#### 1. Confinement Conditions

---

[83] *Argue v. Hofmeyer,* 80 F. App'x. 427, 430 (6th Cir. 2003) (denying claim that alleged defendants interfered with inmate's ability to file a grievance); *Keenan v. Marker,* 23 F. App'x. 405, 407 (6th Cir. 2001) (holding no deprivation of federal right for denying claim as there was no right to prison grievance procedure).

[84] Doc. 10 at 6.

[85] *Park v. Morgan,* No. 1:15-cv-182, 2015 WL 1637168 at *4 (S.D. Ohio Apr. 10, 2015), *adopted by* 2015 WL 3904596 (June 25, 2015).

[86] *Id.* (finding that sixty days of conditions amounting to solitary confinement did not state a claim); *Cook v. Erdos,* No. 1:18-cv-341, 2018 WL 3045073 at *4 (S.D. Ohio June 20, 2018), *adopted by* 2018 WL 3439635 (July 17, 2018) (holding that denial of ability to exercise outside of cell for ninety days did not state a claim).

[87] *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Plaintiff Walker claims that Defendants forced him to spend time in cells that he had covered in his own feces on two separate occasions and that, due his own actions, the cells were flooded.[88] Walker complains of not receiving medical treatment after the second incident.[89] He also says that Defendant Hristovski dripped toilet water throughout his cell and on his blanket, that he was denied toilet paper on one occasion, and that Defendants returned him to his cell with only a suicide gown and no blanket.[90]

To state an Eighth Amendment-violation claim, Walker must satisfy two requirements. First, under the objective component, Walker must show that objectively the conditions were "sufficiently serious" and that "a prison official's act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities."[91] Second, under the subjective component, Plaintiff Walker must show that an "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have drawn] the inference."[92]

Plaintiff's pleadings fail to satisfy the first component of the test.

Regarding Plaintiff's claims relating to the feces and toilet water, courts within the Sixth Circuit have held that exposure to sewage, without accompanying allegations of resulting physical harm, fail to rise to the level of Eighth Amendment violations.[93] The

---

[88] Doc. 10 at 6-9.
[89] *Id.*
[90] *Id.* at 6.
[91] *Farmer*, 511 U.S. at 834.
[92] *Id.* at 837.
[93] *Keel v. Davison County Sheriff's Office*, 2015 WL 328252 at *3 (M.D. Tenn. Jan. 23, 2015), *adopted by* 2015 WL 799724 (Feb. 25, 2015) (holding that "temporary exposure to sewage water in [plaintiff's] cell, without any evidence of resulting physical injuries, fails to satisfy the objective component"); *Antonelli v. Walters*, Civil No. 07-219-GFVT, 2009 WL 921103 at *20 (E.D. Ky. Mar. 31, 2009) (dismissing claim resulting from raw sewage in cell because plaintiff "allege[d] no physical harm or detriment"); *Cross v. Bradley Cty. Jail*, No. 1:08-cv-123, 2009 WL 2043884, at *5 (E.D. Tenn. July 2,

Sixth Circuit has also affirmed the dismissal of claims based on a prisoner being subjected to a flooded cell and being deprived of a mattress and bedding and personal hygiene items, including toilet paper, for a fixed period of time.[94]

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims relating to the conditions of his confinement.

### 2. Medical Treatment

Plaintiff's claim regarding the lack of medical treatment also fails. In order to satisfy the Eighth Amendment claim objective component, Walker must allege that he suffered a "sufficiently serious medical need" that has been diagnosed by a physician as requiring treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[95]

Plaintiff Walker has not alleged that he suffered from any medical need, much less one that was serious or required a doctor's attention. Plaintiff states he needed medical attention because he covered himself in his own feces and then was made to remain in that state overnight. Although Walker's actions no doubt made conditions for himself uncomfortable and unpleasant for a few hours, Walker does not say that they caused medical harm. The Court **GRANTS** the motion to dismiss this claim.

### 3. Excessive Force

---

2009) (denying claim that inmates were made to endure smell of raw sewage in facilities because claim did not "allege a long-term sanitary issue" or that "the condition posed a substantial risk of serious harm").

[94] *Dellis v. Corr. Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (dismissing claim where inmate was subjected to a flooded cell because it was only a "temporary inconvienc[]" and failed to state a claim); *Richmond v. Settles*, 450 F.App'x. 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment. . . . [T]he deprivation of a shower and other personal hygiene items for a 'brief span of time . . ., i.e., only six days' is not actionable conduct.").

[95]

Walker also complains of the use of force against him. He says that Defendant Hristovski sprayed him with mace.[96] He also claims that an unnamed officer led him from the cell, shoving Walker into walls, and took him away from cameras where Defendant Wolpe and other unnamed officers hit and kicked him repeatedly in the head.[97]

In evaluating Walker's excessive force claims, the Court must determine "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."[98] The Court looks at factors such as the need for force, the amount used, the officer's perception of threat, and efforts made to temper the severity of the force used.[99]

### a. Use of Mace

Walker says Hristovski came into the recreation area and told him to "cuff up," an order that Walker ignored because he had changed his mind about leaving.[100] After Walker refused, Hristovski began to toss Walker's cell. When Defendant Hristovski began damaging his belongings, Walker became "visib[ly] agitated" and began to yell.[101] Walker claims that Hristovski alleges that Walker then spit in his face, though Walker says prison officials never disciplined him for doing so.[102] In response to the alleged spitting, Walker says that Hristovski sprayed him with mace, and then Walker jumped back. Hristovski then attempted to spray Walker again, even though Walker was no longer in Hristovski's "space to cause harm."[103]

---

[96] Doc. 10 at 6.
[97] *Id.* at 8.
[98] *Davis v. Agosto*, 89 F. App'x 523, 525 (6th Cir. 2004).
[99] *Id.*
[100] Doc. 10 at 6.
[101] *Id.*
[102] *Id.*
[103] *Id.*

Case No. 1:19-cv-00750
Gwin, J.

Based on the pleadings, which the Court must construe liberally, the Court cannot say at this early date in the case that Walker can establish no set of facts that entitle him to relief.

The Sixth Circuit has held that the use of mace to restore order after an inmate fails to obey an order does not violate that inmate's Eighth Amendment rights.[104] The facts surrounding the incident are not clear enough for the Court to determine whether Defendant Hristovski used the mace to restore order or in retaliation.

Walker disputes the allegation that he spit on the Defendant and although he admits to being agitated and yelling, he does not specify whether he was still contained within the recreation cage while Defendant Hristovski was tossing his cell. Based on the allegations in the complaint, the Court is unable to say with certainty that Plaintiff fails to state a claim.

The Court **DENIES** the motion to dismiss this claim.

### b. Physical Abuse

Plaintiff Walker alleges that an unnamed officer led him from his cell, shoving him into the walls, and took him to an area off camera where Defendant Wolpe and other unknown officers hit and kicked him in the head repeatedly.[105] Defendants do not address this claim in their motion to dismiss.

Even if Defendants had moved to dismiss this claim, however, the Court finds that Walker has pleaded sufficient allegations to state a claim relating to this incident. The facts

---

[104] *Jennings v. Mitchell*, 93 F. App'x. 723, 725 (6th Cir. 2004) (affirming grant of summary judgment where pepper spray was used "maintain or restore discipline" and plaintiff "disobeyed repeated direct orders prior to the use of pepper spray"); *Thomas v. Greene*, No. 99-3179, 1999 WL 1253102, at *2 (6th Cir. 1999) (upholding dismissal of case where pepper spray was used against uncooperative and threatening plaintiff, officer did not use more force than necessary to make plaintiff comply, plaintiff did not allege any injury, and plaintiff did not present any evidence that officer acted maliciously or sadistically). The court in *Thomas* considered that the plaintiff did not allege malicious intent on the part of the officer. While Walker states that Hristovski sprayed him in retaliation.

[105] Doc. 10 at 8.

Case No. 1:19-cv-00750
Gwin, J.

as reported in Walker's complaint indicate that Walker was complying with the officers' orders to leave his cell when the physical abuse allegedly occurred.[106] The complaint alleges hitting and kicking not to restore order and discipline. Given Walker's arguable compliance in leaving the cell, kicking and hitting Plaintiff in the head would serve no penological interest. Furthermore, the Plaintiff alleges that the officers took him off camera, suggesting that their actions were not for legitimate purposes. Plaintiff Walker may proceed on this claim.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Plaintiff Walker's claim against Defendant Wolpe regarding the excessive use of force during an incident in which Plaintiff alleges Wolpe was part of a group of officers that repeatedly hit and kicked him in the head, against Defendant Hristovski for the destruction of his Quran, and against Defendant Hristovski for the use of mace survive.

IT IS SO ORDERED.

Dated: March 5, 2020            *s/     James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

---

[106] *Id.*